UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:22-CV-00033-GNS-LLK

MICHAEL YANDAL                                                                    PLAINTIFF

v.

DENSO AIR SYSTEMS KENTUCKY                                          DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Defendant's Motion for Summary Judgment (DN 21). The motion is ripe for adjudication. For the reasons that follow, the motion is **GRANTED**.

## I.      BACKGROUND

In 2019, Defendant DENSO Air Systems Kentucky ("DENSO") hired Plaintiff Michael Yandal ("Yandal"), who identifies as American Indian,[1] as an engineering tech for which he was initially paid $20.08 per hour. (Yandal Dep. 36:19-37:3, 41:4-42:16, Feb. 15, 2023, DN 21-3). Shortly after starting, Yandal was transferred to night shift. (Pl.'s Statement Facts Supp. Resp. ¶ 27, DN 23-2 [hereinafter Pl.'s Stm't]). At around that same time, he suffered an injury on the job but did not realize it until several weeks later, when he was diagnosed with a hernia. (Pl.'s Stm't ¶¶ 25-26). Yandal sought to initiate a workers' compensation claim, but when he reported the injury to DENSO, there was a misunderstanding about whether the injury occurred at work, causing DENSO to issue a belated incident report. (Yandal Dep. 98:15-100:14). Yandal was unable to receive workers' compensation to pay for his surgery as a result. (*See* Yandal Dep. 100:15-19).

---

[1] Yandal's EEOC charge states:  "I believe I was discriminated against because of my race, Black/African American . . . ."  (Def.'s Mot. Summ. J. Ex. 6, at 2, DN 21-8).  Yandal claims that this discrepancy exists because the EEOC prepared his EEOC charge and mistakenly assumed he was Black during the phone call.  (Pl.'s Resp. 2).

After working at DENSO for a little over a year, Yandal applied for a New Product Inspections ("NPI") Specialist position. (LeForge Decl. ¶ 8, DN 21-11). DENSO determined that Yandal was not qualified for the position and instead hired Van Fleming ("Fleming") to the position. (LeForge Decl. ¶¶ 10-12). Later, Yandal discovered he was the lowest paid person on his team, despite being the only member of his team with a four-year degree. (Pl.'s Stm't ¶¶ 57-60). Due to his grievances with DENSO, Yandal sought medical attention and his doctor placed him on a leave of absence in late April 2021. (Pl's Stm't ¶ 64-65). While Yandal was on leave, DENSO modified its compensation structure in an attempt to standardize its employees' pay rates. (LeForge Decl. ¶¶ 18-20). Yandal remained on leave until July 2021, when he informed DENSO that he was "involuntarily" resigning. (Def.'s Mot. Summ. J. Ex. 8, DN 21-10).

Yandal filed a charge with the EEOC and received a right to sue letter.[2] (Def.'s Mot. Summ. J. Ex. 6, at 1-3, DN 21-8; Pl.'s Stm't ¶ 78). He initiated this action alleging employment discrimination under Title VII of the Civil Rights Act of 1964. (Compl. ¶1, DN 1).

## II.    JURISDICTION

The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because a federal question is presented.

## III.    STANDARD OF REVIEW

In ruling on a motion for summary judgment, the Court must determine whether there is any genuine issue of material fact that would preclude entry of judgment for the moving party as a matter of law. *See* Fed. R. Civ. P. 56(a). The moving party bears the initial burden of stating the basis for the motion and identifying evidence in the record that demonstrates an absence of a genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the

---

[2] The right to sue letter does not appear to have been submitted to the Court.

moving party satisfies its burden, the non-moving party must then produce specific evidence proving the existence of a genuine dispute of fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49 (1986).

While the Court must view the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show the existence of some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citation omitted). Rather, the non-moving party must present specific facts proving that a genuine factual dispute exists by "citing to particular parts of the materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient" to overcome summary judgment. *Anderson*, 477 U.S. at 252.

## IV.   DISCUSSION

DENSO seeks summary judgment on all Yandal's claims, arguing that Yandal has failed to present proof to create a genuine issue of material fact supporting his claims for discrimination and constructive discharge. (Defs.' Mem. Supp. Mot. Summ. J. 1, DN 21-1 [hereinafter Defs.' Mem.]). Here, Yandal does not offer any direct evidence of racial discrimination, therefore his claim must be analyzed under the *McDonnell Douglas/Burdine* framework. *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391 (6th Cir. 2008). The Sixth Circuit has explained that:

> Under this framework, the plaintiff bears the initial "not onerous" burden of establishing a *prima facie* case of discrimination by a preponderance of the evidence. To establish a *prima facie* case of employment discrimination, a plaintiff must demonstrate that: (1) he is a member of a protected class; (2) he was qualified for his job; (3) he suffered an adverse employment decision; and (4) he was replaced by a person outside the protected class or treated differently than similarly situated non-protected employees. Once the plaintiff establishes this *prima facie* case, the burden shifts to the defendant to offer evidence of a

3

legitimate, non-discriminatory reason for the adverse employment action.  Finally, if the defendant succeeds in this task, the burden shifts back to the plaintiff to show that the defendant's proffered reason was not its true reason, but merely a pretext for discrimination.  Although the burdens of production shift, the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.

*Id.* at 391-92 (internal quotation marks omitted) (internal citations omitted) (citation omitted).

The Complaint has no formal listing of claims, and instead the "Statement of Claims" section states the facts underlying his claim under Title VII of the Civil Rights Act of 1964 ("Title VII"), including several background facts which taken alone are plainly non-actionable. (*See* Compl. ¶¶ 11-59).  Based on his interrogatory responses, Yandal's claims appear to be that DENSO discriminated against him on the basis of his race by:  (1) failing to promote him to the NPI specialist position; (2) paying him less than similarly situated coworkers; (3) preventing his workers' compensation claim from being accepted;[3] and (4) constructively discharging him. (Yandal Dep. Ex. 7, ¶¶ 1, 4, 7, 10, DN 21-9).

### A.      Failure to Promote

To establish a prima facie case for his failure to promote claim, Yandal must show: "(1) [he] belongs to a protected class; (2) [he] applied for and was qualified for the position; (3) [he] was considered for and denied the position despite [his] qualifications; and (4) an individual of similar qualifications who was not a member of the protected class received the promotion." *Russell v. Three Pillars*, No. 21-1481, 2022 WL 351770, at *5 (6th Cir. Feb. 7, 2022) (quoting *Crane v. Mary Free Bed Rehab. Hosp.*, 634 F. App'x 518, 524 (6th Cir. 2015)).

---

[3] Yandal asserts that DENSO failed to timely file an incident report related to an injury he suffered on the job that ultimately resulted in his workers' compensation claim being denied. (Yandal Stm't ¶¶ 33-34).  Yandal admits that this failure was not related to his race, and instead he states that there was a "misunderstanding" and DENSO "mishandl[ed] the paperwork." (Yandal Dep. 100:7-14, 147:11-15).  Yandal has failed to supply any evidence that DENSO's failure to file the incident report was discriminatory conduct related to his race.  Accordingly, the motion is granted as to this claim.

DENSO asserts that Yandal cannot create a *prima facie* case for the second and fourth elements and that, even if Yandal has satisfied his burden, DENSO had a legitimate, nondiscriminatory reason for its decisions that Yandal cannot show was pretextual.  (Def.'s Mem. 12-14).

### 1.    *Prima Facie Stage*

### a.    **Yandal's Qualifications**

DENSO argues that Yandal has offered no evidence, other than his own opinion, that he was qualified for the NPI position.  (Def.'s Mem. 12-13).  "[A] court's focus in determining whether the plaintiff can prove a prima facie case should be 'on a plaintiff's *objective* qualifications to determine whether he or she is qualified for the relevant job.'"  *Browning v. Franklin Precision Indus., Inc.*, No. 1:21-CV-00071-GNS-HBB, 2023 WL 2730267, at *12 (W.D. Ky. Mar 30, 2023) (quoting *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 575 (6th Cir. 2003)).  "In making that determination, 'the inquiry should focus on criteria such as the plaintiff's education, experience in the relevant industry, and demonstrated possession of the required general skills.'"  *Id*. (quoting *Wexler*, 317 F.3d at 576).

Here, the NPI position required the following minimum qualifications:

- Bachelor of Science degree in engineering.
- 2-5 years of experience in Manufacturing; previous experience in Manufacturing Engineering
- Experience with assembly processes, metal forming, brazing/welding, leak testing is preferred
- Competent using Office and CAD applications.
- Experience in automotive industry and/or high-volume manufacturing is preferred.
- 18 years of age or older.

(Def.'s Mot. Summ, J. Ex. 5, at 1, DN 21-7 [hereinafter NPI Description]).

In his deposition, Yandal was asked about each of these qualifications and answered that he possessed all of them. (Yandal Dep. 103:23-105:10). Yandal has a bachelor's degree in engineering from Murray State University. (Def.'s Mot. Summ. J. Ex. 2, DN 21-4). Yandal testified that he had two to five years of experience in manufacturing from "Kohler. Sigri Great Lakes Carbon, Aztec." (Yandal Dep. 104:23-105:2). He had previously testified that he worked as a builder/packer at Kohler from 1994 to 1996. (Yandal Dep. 18:11-20). Yandal also stated that he was competent in using Office and CAD applications and had experience in the automotive industry and/or high-volume manufacturing. (Yandal Dep. 105:3-8).

Accordingly, Yandal has presented sufficient evidence that he was qualified for the NPI position to satisfy his *prima facie* burden for this element.

### b.        The Promoted Individual's Qualifications

To determine whether Yandal has established a prima facie case of discrimination, the Court must engage in "a general weighing of the qualifications" of Yandal and the person who received the role, Fleming. *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 813-14 (6th Cir. 2011); (*see* LeForge Decl. ¶ 12). "[I]t is incumbent upon the plaintiff to establish that [he] and the non-protected person who ultimately was hired for the desired position had similar qualifications." *Provenzano*, 663 F.3d at 814 (quoting *White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232, 242 (6th Cir. 2005)).

Here, Yandal argues that Fleming was not qualified for the NPI position because his resume does not show that he has a degree in engineering as required for the position. (Pl.'s Mem. Supp. Resp. Def.'s Mot. Summ. J. 3, DN 23-1 [hereinafter Pl.'s Resp.]; LeForge Decl. Ex. 2, at 1-3, DN 21-11 [hereinafter Fleming Resume]; *See* NPI Description). Noticeably absent from DENSO's submissions is any assertion or evidence that Fleming actually had the requisite

6

degree.  (*See* Def.'s Mem.; Def.'s Reply Mot. Summ. J., DN 24 [hereinafter Def.'s Reply]).

DENSO instead argues that Yandal has failed to meet his evidentiary burden to supply evidence

that Fleming actually lacked the degree.  (Def.'s Reply 2-3).  In the absence of any evidence

indicating otherwise, Yandal's reliance on the lack of any mention of education on Fleming's

resume is sufficient to establish, at the *prima facie* stage, that Fleming did not have the degree

required by the job description.  *See Meyrose v. Vitas Hospice Servs., LLC*, No. 19-91-DLB-CJS,

2021 WL 5139478, at *9 (E.D. Ky. 2021) ("Plaintiff's burden at the prima facie stage is 'not

onerous' and 'poses a burden easily met,' as this stage is 'meant simply to force a defendant to

proceed with its case.'"  (quoting *Provenzano*, 663 F.3d at 812-13)).

   Still, Yandal may not simply hang his hat on the assertion that Fleming lacked one of the

listed qualifications.  The Sixth Circuit has held that "employers are *not* rigidly bound by the

language in a job description."  *Browning v. Dep't of Army*, 436 F.3d 692, 696 (6th Cir. 2006)

(citing *Wrenn v. Gould*, 808 F.2d 493 (6th Cir. 1987)).  In a Title VII case, what is important is

"the employer's motivation, not the applicant's perceptions, or even an objective assessment, of

what qualifications are required for a particular position."  *Wrenn*, 808 F.2d at 502.  Therefore,

even accepting that Fleming lacked a bachelor's degree in engineering, the Court must still

determine whether Yandal and Fleming were similarly qualified.

   There is evidence that Yandal possessed the requisite degree and had "at least two" years

of experience in manufacturing.  (Yandal Dep. 103:23-104:9).  By contrast, Fleming's resume

shows that he had roughly twenty years of experience in manufacturing and engineering.

(Fleming Resume 1-3).  Plainly, if Fleming had the requisite degree, the vast gulf in experience

between Yandal and Fleming would render them not similarly qualified.  Accepting that Fleming

did not, Yandal's superior education is sufficient to establish that he was similarly qualified to

Fleming at this stage. *Cf. Provenzano*, 663 F.3d at 814 (recognizing that the two employees need not be an "exact match[]" and finding two employees similarly qualified where one "had more experience and education" than the other, but the other "had a stronger performance record, without any written or verbal warnings") (alteration in original).

Based on the foregoing, Yandal has established a *prima facie* case of discrimination on his failure to promote claim.

### 2.    *DENSO's Legitimate, Nondiscriminatory Reason*

The Sixth Circuit has explained:

> Once the plaintiff meets her prima facie burden, the burden of production shifts to the employer to articulate a legitimate nondiscriminatory reason for failing to promote the plaintiff to the position sought.  [A defendant] is not required to persuade the court that it was actually motivated by the proffered reasons.  Rather, it is sufficient for [the defendant] to raise a genuine issue of fact as to whether it discriminated against [the plaintiff].  In order to accomplish this, [the defendant] must clearly set forth, through the introduction of admissible evidence, the reasons for not promoting [the plaintiff].

*Id.* at 814-15 (internal citations omitted) (citation omitted).

DENSO submits the declaration of Scott LeForge ("LeForge"), who worked as the "Human Resources Safety and Environmental Manager" when Yandal applied for this job. (LeForge Decl. ¶¶ 1-2).  LeForge explained that he reviewed Yandal's resume and application for the NPI position and concluded that the was not qualified for the position because he lacked the requisite manufacturing experience, experience with assembly processes, and experience in the automotive industry and/or high-volume manufacturing. (LeForge Decl. ¶¶ 9-10).  LeForge explained that Fleming on the other hand was "extremely qualified" in light of his "nearly 20 years' experience as a plant engineer, project manager, process engineer and maintenance manager."  (LeForge Decl. ¶ 12).

Even accepting that there is a genuine issue of fact as to whether Yandal was qualified for the open position, LaForge's declaration established that he valued Fleming's almost twenty years of relevant experience very highly when making the decision to hire him. (*See* LeForge Decl. ¶ 12). This is sufficient to establish a legitimate, nondiscriminatory reason for choosing to promote Fleming over Yandal. *See, e.g.*, *White*, 429 F.3d at 243-44 (finding sufficient the defendant's proffered legitimate, non-discriminatory reason that "it chose not to hire [the plaintiff] because it decided to hire a more qualified candidate" who had seventeen years of relevant experience).

### 3.    *Pretext*

"A plaintiff can refute the legitimate, nondiscriminatory reason that an employer offers to justify an adverse employment action 'by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct.'" *Provenzano*, 663 F.3d at 815 (quoting *Wexler*, 317 F.3d at 576). "[A] reason cannot be a pretext for discrimination unless it is shown both that the reason was false, and that discrimination was the real reason." *Igwe v. Salvation Army*, 790 F. App'x 28, 35 (6th Cir. 2019) (quoting *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 285 (6th Cir. 2012)).

Yandal asserts that he was denied the promotion because of his race, color, and national origin and DENSO's assertion that it promoted Fleming due to his superior experience is pretextual. (Pl.'s Resp. 3). In support of this assertion, Yandal points to the fact that Fleming did not meet the minimum qualifications for the role, and that Fleming's promotion was nepotic. (Pl.'s Resp. 3).

9

As explained above, "employers are *not* rigidly bound by the language in a job description." *Browning*, 436 F.3d at 696 (citing *Wrenn*, 808 F.2d at 493).  So, the possibility that Fleming lacked all the minimum requirements listed on the job description offers little, if any, support for Yandal's claim of pretext.

Yandal's claims of nepotism are based on vague insinuations that two employees of DENSO, Jeff Ashby ("Ashby") and Jason Godsey ("Godsey"), "colluded against [Yandal] in order to make sure that their friend, Van Fleming, received the NPI Engineer role, even though he did not meet the minimum requirements for the position."  (Pl.'s Stm't ¶ 77).  In his deposition, Yandal acknowledged that neither Ashby nor Godsey had management authority or responsibility over new hires but stated that "for some weird reason, [Godsey] [told] Marketta, 'Don't worry about the NPI engineer position. I already found somebody else for that.'"  (Yandal Dep. 109:5-11).  Yandal explains that he discovered that Godsey and Fleming had previously worked together at another company.  (Pl.'s Stm't ¶ 77).  These assertions, even accepted as true, do not show that DENSO's justification was pretextual and relate only tangentially, if at all, to DENSO's actual hiring process.

Yandal has failed to show that DENSO's decision to hire Fleming because of his superior experience was pretextual.  Accordingly, DENSO's motion for summary judgment is granted as to this claim.

## B.    Unequal Pay

Yandal also claims that he received disparate pay because of his race.  (Compl. ¶¶ 45-50). DENSO addresses Yandal's claims with respect to before and after it modified its compensation structure to standardize pay rates across technicians.  (Def.'s Mem. 17-21; *see* LeForge Decl. ¶ 13).

1.      *Pre-Modification*

a.      **Prima Facie Case**

Yandal asserts that he received lower pay as a result of his status as an American Indian. (Pl.'s Resp. 4). He states that he was the lowest paid person on his team despite being the most educated. (Pl.'s Stm't ¶¶ 58-60). DENSO argues that Yandal has failed to establish the fourth prong of his *prima facie* case, that he and his coworkers were similarly situated because Yandal and his coworkers had differing seniority. (Def.'s Mem. 19).

Yandal claims that all four of the people in his department were earning more money than him despite the fact he was the most educated member of his department. (Pl.'s Stm't ¶¶ 57-59). He asserts that only one of these individuals was hired after him, Steven Cunningham ("Cunningham"). (Pl.'s Stm't ¶¶ 57-58). A difference in seniority is enough to render another employee not similarly situated. *See, e.g.*, *Berry v. Maker's Mark Distillery, Inc.*, No. 3:12CV-185-JHM, 2014 WL 1761922, at *8 (W.D. Ky. Apr. 30, 2014) (citing *Homes-Naples v. Girard Bd. of Educ.*, 212 F. Supp. 2d 743, 750 (N.D. Ohio 2001)). Therefore, Yandal's admission that three of the members of his department had superior seniority defeats his *prima facie* case for discrimination as to those co-workers. (Yandal Dep. 111:5-21). Yandal has succeeded, however, in establishing a *prima facie* case based on the discrepancy between his pay and Cunningham's, who was hired after Yandal. (Pl.'s Stm't ¶ 57).

b.      **DENSO's Nondiscriminatory Justification**

LeForge explained that DENSO compensated employees based on their relevant experience. (LeForge Decl. ¶ 24). LeForge explained that Yandal was hired at a lower rate of pay than others in his department because he had less experience than others in his department, and Cunningham was hired at a higher rate of pay than Yandal because Cunningham had more

experience than Yandal.  (LeForge Decl. ¶¶ 21, 25).  This is a nondiscriminatory basis for

disparate pay.  Therefore, the burden returns to Yandal to supply some evidence of pretext.

c.       **Pretext**

As explained above, to show pretext, Yandal must show that DENSO's purported

justification "(1) has no basis in fact, (2) did not actually motivate the defendant's challenged

conduct, or (3) was insufficient to warrant the challenged conduct."  *Provenzano*, 663 F.3d at

815 (quoting *Wexler*, 317 F.3d at 576).  "At the summary-judgment stage of the proceedings,

[Yandal] must set forth evidence from which a reasonable juror could reject [DENSO]'s []

explanations for its failure to promote him and infer that [DENSO] [] instead made its decision

on the basis of [Yandal]'s [race]."  *Browning*, 436 F.3d at 696 (citing *Braithwaite v. Timken, Co.*,

258 F.3d 488, 494 (6th Cir. 2001)).

Yandal relies only on evidence of his and Cunningham's relative qualifications as

evidence of pretext.  (Pl.'s Stm't ¶¶ 57-59).  The Sixth Circuit has explained that "when

qualifications evidence is all (or nearly all) that a plaintiff proffers to show pretext, the evidence

must be of sufficient significance itself to call into question the honesty of the employer's

explanation."  *Bender v. Hecht's Dep't Stores*, 455 F.3d 612, 627 (6th Cir. 2006).  Further, "a

plaintiff's subjective assessment of his qualifications alone does not show pretext."  *Stokes v.

Detroit Pub. Schs.*, 807 F. App'x 493, 502 (6th Cir. 2020) (citing *Hedrick v. W. Rsrv. Care Sys.*,

355 F.3d 444, 462 (6th Cir. 2004)).  Here, Yandal has offered nothing other than his opinion that

his superior education rendered him more qualified than Cunningham and therefore deserving of

equal or greater pay.  (*See* Pl.'s Stm't ¶¶ 57-59).  A reasonable decisionmaker could have found

that Cunningham's relevant experience was a reasonable basis for higher pay, and Yandal makes

no showing that his experience was equal to or greater than Cunningham's.  *Cf. id*. (explaining,

12

in the failure to hire context, that "[i]f two reasonable decisionmakers could consider the candidates' qualifications and arrive at opposite conclusions as to who is more qualified, then clearly one candidate's qualifications are not significantly better than the other's.  Thus, [the] qualifications evidence is not itself sufficient . . . to survive summary judgment." (alterations in original) (quoting *Bender*, 455 F.3d at 628))

Yandal has failed to create a genuine issue of fact that either DENSO's "reason was false" or that "discrimination was the real reason."  *Igwe*, 790 F. App'x at 35 (quoting *Seeger* 681 F.3d at 285).  Accordingly, summary judgment is granted to DENSO as to this claim with respect to the time prior to the modification of the compensation structure.

### 2.    *Post-Modification*

In April 2021, DENSO issued company-wide raises.  (LeForge Decl. ¶ 13).  Afterwards, Yandal complained that maintenance technicians were being paid more than engineering technicians despite performing the same duties.  (LeForge Decl. ¶ 15).  DENSO ultimately increased both categories to the same pay structure and issued backpay to the date of the original raises.  (LeForge Decl. ¶¶ 20, 22; *see* Yandal Dep. 122:22-124:8).

Yandal asserts that there was a company-wide raise and incentive bonus that was supposed to appear on his pay stub for April 30, 2021, but did not.  (Pl.'s Stm't ¶¶ 60-63).  Absent from Yandal's declaration is any assertion that he was the only employee who did not receive this compensation on his April 30 pay stub or any evidence that would allow a reasonable jury to find that he was treated differently than similarly situated employees.  (*See* Pl.'s Stm't).  Therefore, Yandal has failed to establish a *prima facie* case of employment discrimination.

Accordingly, summary judgment is granted as to Yandal's disparate pay claim.

### C.      Constructive Discharge

Finally, Yandal asserts that he was constructively discharged.  (Pl.'s Stm't ¶ 75).  "To constitute a constructive discharge, the employer must deliberately create intolerable working conditions, as perceived by a reasonable person, with the intention of forcing the employee to quit and the employee must actually quit." *Moore v. KUKA Sys. & Robot Corp.*, 171 F.3d 1073, 1080 (6th Cir. 1999).  "To evaluate a plaintiff's claim alleging a constructive discharge under Title VII, 'requires an inquiry into both the objective feelings of an employee, and the intent of the employer.'" *Starnes v. JLQ Auto. Servs. Co.*, 442 F. Supp. 2d 416, 427 (E.D. Mich. 2006) (quoting *Ford v. Gen. Motors Corp.*, 305 F.3d 545, 554 (6th Cir. 2002)).  "[A] plaintiff must show more than a Title VII violation to prove constructive discharge . . . ." *Moore*, 171 F.3d at 1080 (citation omitted).  The Sixth Circuit has adopted seven factors for courts to consider in determining if an employer deliberately created an intolerable environment:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status.

*Perry v. Norton Hosp., Inc.*, No. 3:21-CV-00192-RGJ, 2023 WL 2755306, at *13 (W.D. Ky. Mar. 31, 2023) (quoting *Logan v. Denny's Inc.*, 259 F.3d 558, 568 (6th Cir. 2001)).

In addition to the conduct that the Court has already ruled did not establish Title VII violations, Yandal relies on a variety of grievances that he alleges took place over the course of his employment.  (Pl.'s Resp. 4-5).  Indeed, much of the conduct that Yandal points to occurred long before his resignation; for example, he states that he was forced to carry tools into work daily, that he lacked his own desk, that his commute was over an hour, and that he was moved to night shift.  (*See* Pl.'s Stm't ¶¶ 8, 9, 27, 41; *see* Pl.'s Resp. 4).  Yandal also points to certain

conditions that he does not allege were unique to him, like having to work 12-hour shifts, seven days a week, which Yandal admits applied to "both production shifts." (Pl.'s Stm't ¶ 35).

These allegations fail to establish a *prima facie* case of discrimination. First, Yandal's allegations do not fit into any of the factors established by the Sixth Circuit. *See Logan*, 259 F.3d at 568 (quoting *Brown v. Bunge Corp.*, 207 F.3d 776, 782 (5th Cir.2000)). Next, Yandal has failed to establish that these conditions caused him to quit. Most of the conditions he relies on for this claim preceded the date of his resignation by over a year. (*See* Pl.'s Stm't ¶¶ 8, 9, 27, 41, 75; *see* Pl.'s Resp. 4). Indeed, the conditions of Yandal's employment such as the length of his commute, the requirement that he bring his own tools, or that he did not have his own desk were all present when he began his employment. (*See* Pl.'s Stm't ¶¶ 8, 9, 41; *see* Pl.'s Resp. 4). Yandal was moved to night shift in November 2019, over a year and a half before his resignation in July 2021. (*See* Pl.'s Stm't ¶¶ 27, 75). That Yandal is relying on conditions so remote in time from his actual resignation, some of which were present from the first day of his employment, weighs against a finding of constructive discharge. *See Arnold v. Cincinnati Sportservice, Inc.*, No. 1:12-CV-460, 2013 WL 3761071, at *14 (S.D. Ohio July 16, 2013) ("These changes occurred approximately twelve months before Arnold resigned which makes it even more unlikely that they forced her to resign." (citing *Geisler v. Folsom*, 735 F.2d 991, 992-93 (6th Cir. 1984)). Finally, Yandal admits that "both production shifts" had to work twelve-hour shifts seven days a week, so even accepting that this was an intolerable working condition, Yandal fails to demonstrate that similarly situated employees were treated differently. (Pl.'s Stm't ¶ 35).

Yandal has failed to create a *prima facie* case that DENSO "deliberately create[ed] intolerable working conditions . . . with the intention of forcing [him] to quit." *Moore*, 171 F.3d at 1080. Therefore, summary judgment is granted as to this claim.

15

## V.    CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (DN 21) is **GRANTED**, and the Complaint is **DISMISSED WITH PREJUDICE**.  The Clerk shall strike this matter from the active docket.

Greg N. Stivers, Chief Judge

United States District Court

March 14, 2024

cc:    counsel of record
       Plaintiff, *pro se*

16